IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
3:09-CV-78-GCM

| | |
|---|---|
| MARY LOUIES HAGGINS | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| CAROLINAS MEDICAL CENTER-MERCY, | ) |
| | ) |
| Defendant. | ) |

**INTRODUCTION**

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment. For the reasons given below, Defendant's motion is GRANTED.

**BACKGROUND**

Plaintiff is a *pro se* litigant who worked as an environmental technician for Carolinas Medical Center-Mercy ("CMC"). Plaintiff alleges that CMC retaliated and discriminated against her on the basis of age, race, and color by terminating her employment, harassing her, and giving her unequal pay.

**I.  Plaintiff's Employment Record**

Plaintiff is a 49 year-old, African American woman. CMC terminated her on July 30, 2008 for her continual tardiness. Plaintiff admits that Terra Barnhill, CMC's Director of Environmental Services, made the decision to fire her. CMC allows an employ to be tardy ten times in one year. An employ that violates the policy is subject to progressive warnings, including a final written warning notifying the employee that the next infraction will result in termination. Plaintiff admits that she was tardy twenty-two times from June 6, 2007 until July

1

30, 2008. Plaintiff was given a final written warning before the final tardiness incident that resulted in her termination. Plaintiff admits that the hospital was required to terminate her under its policy. Plaintiff does not know of any similarly situated white employees with a comparable tardiness record.

Plaintiff was also disciplined for unsatisfactory job performance, and was given a series of written warnings, culminating in a final written warning. During the month Plaintiff was terminated, she was also given a written warning for speaking negatively about her co-workers. Plaintiff admitted she did not know of any hospital employee who was not African-American and substantially younger than her with more than 20 incidents of tardiness and two final warnings that was not terminated.

Before bringing this action, Plaintiff filed a complaint with the EEOC in which she alleged discrimination only on the basis of race and retaliation. Plaintiff did not allege discrimination on the basis of age or color, and Plaintiff did not allege that she had been harassed. The EEOC reviewed the complaint and was "unable to conclude that the information obtained established violations of the statutes." (Def. Mot. Summ. J., Ex. A, p. 26.)

II.     **Plaintiff's Protected Activity Allegations**

Plaintiff alleges that she complained to CMC's Human Resources Department and her supervisor, and that Plaintiff was terminated in retaliation for her complaints. Plaintiff alleges that on July 11, 2008, she complained to Human Resources that the pay differential between her and Virginia McIlwaine, a senior employee, was discriminatory, and that Ms. McIlwaine was telling people that Plaintiff was going to be fired. Plaintiff also alleges that on July 18, 2008 that she complained to her supervisor, Gaylynn Gravette, that African-American environmental

technicians were required to work weekends, whereas Donna Driscoll, a white environmental tech, was only required to work weekdays.

Defendant deposed Plaintiff, and in the deposition Plaintiff was shown Donna Driscoll's time cards for June and July of 2008. In both of those months, Ms. Driscoll worked a number of weekend shifts. Plaintiff then admitted that Ms. Driscoll did indeed work weekends. In the deposition, Plaintiff also admitted that Ms. Barnhill—the person who decided to terminate Plaintiff—had no knowledge of Plaintiff's complaints to Human Resources. In Ms. Barnhill's affidavit to the Court, she states that she had no knowledge of Plaintiff's complaints to Human Resources or Ms. Gravette.

### III. Plaintiff's Harassment Allegations

Plaintiff alleges that she was harassed by Virginia McIlwaine, an African-American employee who is approximately six years older than Plaintiff. Ms. McIlwaine is also an environmental technician and generally worked as the lead swing person—a senior position—when she was on duty. Plaintiff complains that Ms. McIlwaine would follow her all day, order her to do tasks, and tell lies about her. In her deposition, Plaintiff admits that Ms. McIlwaine was not harassing her because of her age, race, or color. Plaintiff also admitted that no other CMC employee harassed her because of her age, race, or color.

### IV. Plaintiff's Unequal Compensation Allegations

Plaintiff was occasionally required to act as lead swing person on her shift—particularly when Ms. McIlwaine was away. This position brings additional duties, such as carrying a pager or walkie-talkie, and she was owed additional compensation when acting as lead swing person. In order to get the extra compensation, Plaintiff was required to fill out a request form. In her complaint, Plaintiff alleged that she had not been compensated for all of her work as lead swing

person. Plaintiff could not, however, point to any specific instance when she filled out the request form and was not paid. Plaintiff further acknowledged that if there was an instance in which she filled out the request form and was not paid, it was not by virtue of race, color, or age based discrimination. Finally, Plaintiff could not identify a white, substantially younger employee who was a lead swing worker; therefore, no comparison could be made.

### V. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. Anderson v. Liberty Lobby, 477 U.S. 242 (1986). The party opposing the motion may not rest upon its pleadings but instead must provide evidence or point to evidence already on the record that would be sufficient to support a jury verdict in its favor. Id. at 248. This evidence must be properly authenticated pursuant to Rule 56(e). Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993). The movant may be entitled to summary judgment merely by showing that the other side will not be able to prove an essential element of its case with respect to which it has the burden of proof. Celotex, 477 U.S. at 322-23.

**DISCUSSION**

### I. Administrative Exhaustion

Summary judgment is granted in favor of Defendant on the age and color discrimination claims, and the harassment claim because Plaintiff failed to exhaust here administrative remedies. "It is axiomatic that a claimant under Title VII must exhaust administrative remedies by raising [her] claim before the EEOC." *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 148

4

(4th Cir. 1999). A plaintiff's claim "generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citing *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 149 (4th Cir. 2002)).

Plaintiff's EEOC charge only alleges discrimination on the basis of race and retaliation, whereas Plaintiff's complaint before this Court alleged discrimination on the basis of age, race, and color, as well as harassment and retaliation. Because Plaintiff only raised race discrimination and retaliation before the EEOC, those are the only claims that are before the Court. In the alternative, the Defendant's memorandum of law outlines several independent bases for granting summary judgment on the unexhausted claims, and the Court adopts the reasoning set forth in the memorandum.

## II. Discriminatory Discharge

Summary judgment is granted as to Plaintiff's claims for discriminatory discharge because she fails to establish a *prima facie* case. Under Title VII, a plaintiff establishes a *prima facie* case by showing "(1) that she is a member of a protected class; (2) that she was qualified for her job and her job performance was satisfactory; (3) that, in spite of her qualifications and performance, she was fired; and (4) that the position remained open to similarly qualified applicants after her dismissal." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)).

Plaintiff admits that she cannot establish the third element of her *prima facie* case: Plaintiff acknowledges that she had twice as many instances of tardiness than allowed under CMC's policy, and under that policy, CMC was required to terminate her employment. Plaintiff

also admits that two final written warnings had been issued because of her unsatisfactory job performance and relationships with coworkers.

### III. Plaintiff Was Terminated for Legitimate Reasons

Even if Plaintiff could establish a *prima facie* case, CMC fired Plaintiff for a legitimate, nondiscriminatory reason, which was not a pretext for discrimination. After a *prima facie* case is made, "'the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*)). This is only a burden of persuasion. *Id.* If the employer meets this burden, the Plaintiff must then "prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000)). A Plaintiff can prove this "'by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)).

CMC has met its burden of articulating a legitimate, nondiscriminatory purpose, and Plaintiff has failed to show this was just a pretext. CMC demonstrates that Plaintiff was terminated because of her excessive tardiness, which violated CMC's policy. CMC also demonstrated that Plaintiff had not satisfactorily executed her duties. CMC abided by its progressive discipline policy, giving Plaintiff a number of warnings before she was terminated. Plaintiff admits that she was repeatedly tardy and that the hospital had no choice but to terminate her.

## IV. Retaliation Claim

Plaintiff failed to establish her *prima facie* case for her retaliation claim; therefore, summary judgment is granted in favor of Defendant. A *prima facie* case for retaliation requires proof that (1) the plaintiff engaged in protected activity, (2) the employer acted adversely against the plaintiff, and (3) the protected activity was causally related to the adverse job action. *Holland*, 487 F.3d at 218.

a. Protected Activity

To establish the protected activity element, a plaintiff must show that he actively opposed "an employment practice that the employee *reasonably believes* is unlawful." *Jordan v. Alternative Resources Corp.,* 458 F.3d 332, 338-39 (4th Cir. 2006). "[T]he analysis for determining whether an employee reasonably believes a practice is unlawful is an objective one, the issue may be resolved as a matter of law." *Id.* at 339 (citing *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268 (2001) (per curiam)).

Plaintiff alleges that the following resulted in retaliation: (1) complaints over Ms. McIlwaine's harassment; (2) complaints over failure to pay her for lead swing work; and (3) complaints over African-American employees having to work weekends, unlike white employees. Plaintiff, however, could not reasonably believe that she was engaging in protected activity under Title VII when she complained about the alleged harassment and unequal pay because she admits that the harassment and unequal pay were not on the basis of her age, race, or color. Concerning the complaint that white employees did not have to work weekends, Plaintiff admits that she had no actual knowledge of white environmental technicians who only worked on weekdays. Plaintiff had assumed that Donna Driscoll—a white environmental technician—did

not work weekends; but upon seeing Ms. Driscoll's timecards, Plaintiff later admitted that Ms. Driscoll worked on the weekends. Therefore, Plaintiff could not reasonably believe that there was an unlawful employment practice.

    b.   Decision Maker's Knowledge

Even if Plaintiff could show protected activity, she fails to show that Ms. Barnhill—the person who fired Plaintiff—had knowledge of the alleged protected activity. In the Fourth Circuit, knowledge of the protected activity is "necessary to establish causation." *Gibson v. Old Town Trolley Tours of Wash. D.C., Inc.*, 160 F.3d 177, 182 (4th Cir. 1998) (citing *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir. 1991)). Ms. Barnhill submitted an affidavit averring that she had no knowledge of Plaintiff's complaints to Human Resources or her supervisor. Further, Plaintiff adduces no evidence of Ms. Barnhill's knowledge.

    c.   Pretext

Even if the Plaintiff established her *prima facie* case, she cannot show that the reasons for her termination were simply a pretext for retaliation. A plaintiff has the burden of persuasion that the legitimate, nondiscriminatory reasons proffered by an employer are simply pretexts for the adverse employment action. *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir.1998). As discussed above, CMC legitimately terminated Plaintiff because of her consistent tardiness and poor job performance.

**CONCLUSION**

For the reasons given above, Defendant's Motion for Summary Judgment is GRANTED.

Signed: March 29, 2010

Graham C. Mullen
United States District Judge